Filed 11/12/24  P. v. Williamson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C098771 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F0209) |
| v. | |
| VANESSA KAY WILLIAMSON, | |
| Defendant and Appellant. | |

Defendant Vanessa Kay Williamson appeals the trial court's summary denial of her petition for resentencing under Penal Code[1] section 1172.6.  She argues, and the People agree, the trial court erred in denying her petition as successive.  We conclude, however, that even so, the instructions at defendant's trial and the resulting jury verdict conclusively establish the jury convicted defendant on a still-valid theory of murder.  Thus, any error in denying the petition was harmless.  We therefore affirm.

BACKGROUND

The events that gave rise to defendant's convictions are summarized in *People v. Williamson* (June 10, 2015, C073738) (nonpub. opn.) (*Williamson*).  Although we do not

---

[1]  Undesignated statutory references are to the Penal Code.

1

rely on the factual summary in *Williamson* to conduct our review, we recount some background facts to provide context.

In October 2009, defendant began dating Daniel K. (Daniel). Daniel drove a route from Sacramento to Redding and Williams delivering prescription medications. Defendant began driving that route with him and sharing his paycheck. At the end of November 2009, defendant moved to Redding, and in January 2010, she renewed a dating relationship with her former boyfriend Robert Lee James IV (James).

On January 7, 2010, defendant suggested to James they rob Daniel on his route. James refused. The following day, defendant told James that Daniel was threatening her family. She told James to get a gun; he got a semiautomatic firearm from his father's bedroom and defendant loaded bullets into the magazine. Initially, defendant carried the gun, but James took it from her and held it while defendant drove him around looking for Daniel. When they found Daniel, defendant drove after him. The brief car chase ended when Daniel's car spun around, and defendant maneuvered her car to put James directly across from Daniel. James opened fire on Daniel killing him.

The People charged defendant and James with murder (§ 187, subd. (a)), assault with a semiautomatic firearm (§ 245, subd. (b)), and discharging a firearm at an occupied vehicle (§ 246). The People alleged numerous sentencing enhancements including the special circumstance that defendant and James committed the charged murder by discharging a firearm from a vehicle. (§§ 190.2, subd. (a)(21), 190, subd. (d).) The People also alleged a principal was armed with a firearm during commission of the charged crimes. (§ 12022, subd. (a).)

At trial, the People offered the jury two alternate theories of liability for first degree murder: (1) felony murder (either robbery or attempted robbery was the underlying felony), or (2) premeditation and deliberation. The jury found defendant guilty of first degree murder (§ 187, subd. (a)) without specifying the theory of liability. The jury also found defendant guilty of assault with a semiautomatic firearm (§ 245, subd. (b)) and shooting at

an occupied motor vehicle (§ 246). The jury found true the allegation that a principal was armed during the commission of the murder (§ 12022, subd. (a)(1)), and the special-circumstance allegation that the murder was committed by discharge of a firearm from a motor vehicle (§ 190.2, subd. (a)(21)).

The trial court sentenced defendant to life without the possibility of parole for her murder conviction, plus 10 years in state prison. Defendant appealed; this court modified the determinate term to nine years and affirmed the judgment as modified. (*People v. Williamson*, *supra*, C073738.)

In May 2019, defendant filed her first petition for resentencing under section 1172.6. The trial court denied the first petition without appointing counsel. Defendant filed a second petition for resentencing under section 1172.6 on October 4, 2021. The trial court denied her second petition without appointing counsel.

On April 17, 2023, this time with the assistance of counsel, defendant filed her third petition for resentencing under section 1172.6. Defendant argued she was entitled to a hearing on the third petition due to recent changes in the law brought about by the passage of Senate Bill No. 775 (2021-2022 Reg. Sess.). Without briefing or a hearing, the trial court denied the third petition as well. The trial court explained its decision to deny the third petition in a written order: "[t]he first petition was such an order after judgment and affected the substantial rights of [defendant]. Ignoring two previous rulings and filing a third petition seeking identical relief is not an appropriate method to have a ruling of a Superior Court Judge challenged. Akin to successive writs of habeas on the same subject matter being an abuse of the writ process, this court views this tactic as improper." To act on the petition, the court concluded, would be an act in excess of its jurisdiction.

Defendant appeals from the order denying her third petition.

## DISCUSSION

### I

### *Successive Petitions*

Defendant contends the trial court erred in summarily denying her resentencing petition on the ground it was a successive petition. The People concede the error but contend the error was harmless. We accept the People's concession. We also agree with the People that defendant was not prejudiced by the error.

"Neither the express language of section [1172.6] nor the stated purpose of the legislation supports limiting access to relief under section [1172.6] . . . where . . . the subsequent petition rested on new legal authority which challenged the basis for the superior court's summary denial of the previous petition." (*People v. Farfan* (2021) 71 Cal.App.5th 942, 946-947.) The parties here agree that section 2 of Senate Bill No. 775 (2021-2022 Reg. Sess.) was new legal authority that entitled defendant to "a second bite at the apple" and the trial court erred in denying her third petition on the ground that it was procedurally improper. Defendant, however, fails to demonstrate that she was prejudiced by that error.

### II

### *Harmless Error Analysis*

Defendant asserts she was prejudiced by the trial court's error because if she was convicted on a felony murder theory, the jury did not make a specific finding that she aided and abetted the actual killer. Without such a finding, defendant argues, she is not ineligible for relief as a matter of law. We disagree.

A defendant whose resentencing petition is denied before an order to show cause issues must " 'demonstrate there is a reasonable probability that in the absence of the error [she] . . . would have obtained a more favorable result.' " (*People v. Lewis* (2021) 11 Cal.5th 952, 974.) As explained more fully below, the record of conviction here establishes as a matter of law that defendant is not eligible for resentencing under

section 1172.6. Accordingly, she cannot demonstrate that, but for the trial court's error, she would have obtained a more favorable result.

*A. Additional Procedural Background*

The trial court instructed defendant's jury on two theories of first degree murder: premeditated and deliberate murder, and the former felony-murder rule. The trial court also instructed the jury that a person may be guilty of a crime as either the perpetrator who "directly committed the crime" or as an aider and abettor of the perpetrator.

Using CALCRIM No. 540B, the trial court instructed the jurors on aiding and abetting in a felony murder:

"The defendant is charged in Count 1 with Murder, under a theory of felony murder. The defendant may also be guilty of Murder, under a theory of felony murder, even if another person did the act that resulted in the death. I will call the other person the perpetrator.

"To prove that defendant is guilty of First Degree Murder under this theory, the People must prove that:

"1. The defendant committed, attempted to commit, or aided and abetted Robbery;

"2. The defendant intended to commit, or intended to aid and abet the perpetrator in committing Robbery;

"3. If the defendant did not personally commit or attempt to commit Robbery, then a perpetrator, whom the defendant was aiding and abetting, personally committed or attempted to commit Robbery;

"4. While committing, or attempting to commit Robbery, the perpetrator caused the death of another person;

"AND

"5. There was a logical connection between the cause of death and the robbery or attempted robbery. The connection between the cause of death and the robbery or attempted robbery must involve more than just their occurrence at the same time and place.

5

"A person may be guilty of felony murder even if the killing was unintentional, accidental, or negligent.

"[¶] . . . [¶]

"The defendant must have intended to commit, or aid and abet the felony of Robbery before or at the time that she caused the death."

Relative to the special-circumstance allegation, the trial court instructed the jury as follows:

"The defendant is charged with the special circumstance of Committing Murder by Shooting a Firearm From a Motor Vehicle in violation of . . . section 190.2[, subdivision] (a)(21).

"To prove that this circumstance is true, the People must prove that:

"1. Robert Lee James shot a firearm from a motor vehicle, killing [the victim];

"2. Robert Lee James intentionally shot at a person who was outside the vehicle;

"AND

"3. At the time of the shooting, the defendant intended to kill."

B. *Application to Defendant's Resentencing Hearing*

Defendant contends the jury's finding that she acted with the intent to kill does not render her ineligible for relief under section 1172.6. In order to find her liable for aiding and abetting a felony murder, she contends section 189, subdivision (e)(2) requires the jury to find not only that she acted with the intent to kill but that she aided and abetted the actual killer in the homicidal act itself. The jury here, however, was not required to make that finding. We disagree with defendant's interpretation of section 189, subdivision (e)(2).

To find a defendant liable for felony murder under section 189, subdivision (e)(2), a jury must find that the defendant "was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (*Ibid.*) Interpreting the requirements of section 189, subdivision (e)(2) has resulted in a split among the courts of appeal that have

6

considered the issue.  As we will explain, we agree with the majority of justices who have decided the issue and interpreted section 189, subdivision (e)(2) to require "only an intent to kill coupled with the traditional actus reus of felony murder, which is participation in the underlying felony."  (*People v. Lopez* (2024) 104 Cal.App.5th 616, 620-621 (*Lopez*); see *People v. Morris* (2024) 100 Cal.App.5th 1016, 1019, review granted July 17, 2024, S284751 (*Morris*); see also *People v. Kelly* (2024) 105 Cal.App.5th 162, 177 (dis. opn. of Gooding, J.) (*Kelly*).)

We acknowledge that other well-respected justices have reached a different conclusion, interpreting section 189, subdivision (e)(2) to require "not only the intent to kill, but also some act that assists the actual killer with the killing itself."  (*Lopez*, *supra*, 104 Cal.App.5th at p. 621; see *People v. Lopez* (2023) 88 Cal.App.5th 566, 580 (dis. opn. of Raphael, J.) *Morris*, *supra*, 100 Cal.App.5th at p. 1033 (dis. opn. of Moore, J.) review granted; see also *Kelly*, *supra*, 105 Cal.App.5th at pp. 167-168.)

Section 189, subdivision (a) defines first degree murder to include "[a]ll murder that is . . . committed in the perpetration of, or attempt to perpetrate," a list of designated felonies including robbery.  "So, when subdivision (e)(2) refers to 'the commission of murder in the first degree,' it, at a minimum, incorporates murder as defined in subdivision (a)."  (*Lopez*, *supra*, 104 Cal.App.5th at p. 621.)  Interpreting nearly identical language in section 190.2, subdivision (c), our Supreme Court agreed.  (See *People v. Dickey* (2005) 35 Cal.4th 884, 900.)  Moreover, when considering the phrase "commission of murder in the first degree," our Supreme Court has determined that liability under the felony-murder doctrine extends to "[a]ll persons aiding or abetting the commission of burglary or robbery . . . when one of them kills while acting in furtherance of the common design."  (*Ibid*.)

Our colleagues who disagree with our interpretation of section 189.2, subdivision (e)(2) argue that "the felony-murder rule has undergone a significant transformation since *Dickey* was decided."  (*Kelly*, *supra*, 105 Cal.App.5th at p. 174.)  As a result, they conclude the decision in *Dickey* is inapposite.  (*Ibid*.)  Most notably, they argue, in *Dickey* the

Supreme Court was interpreting section 190.2, subdivision (c), which uses the words "any actor," but section 189, subdivision (e)(2) uses the words "the actual killer." (*People v. Lopez*, *supra*, 88 Cal.App.5th at p. 587 (dis. opn. of Raphael, J.); see *Morris*, *supra*, 100 Cal.App.5th at pp. 1032-1034 (dis. opn. of Moore, J.) review granted; *Kelly*, *supra*, 105 Cal.App.5th at p. 174.) This difference, they assert, reflects a change in the required actus reus for liability under a theory of aiding and abetting a felony murder. Consequently, a defendant can no longer be found liable for aiding and abetting felony murder by aiding any other person in a felony; the defendant must be found to have aided and abetted the actual killer in the killing itself. (*People v. Lopez*, *supra*, 88 Cal.App.5th at p. 587 (dis. opn. of Raphael, J.); *Morris*, *supra*, 100 Cal.App.5th at pp. 1032-1034 (dis. opn. of Moore, J.) review granted; *Kelly*, *supra*, 105 Cal.App.5th at p. 167.)

Our Supreme Court, however, has suggested otherwise. When "providing a contrasting example to the direct aiding and abetting and natural and probable consequences case before it, the court [in *Curiel*] discussed the jury findings that would ordinarily preclude a nonkiller felony-murder defendant from resentencing eligibility. (*People v. Curiel* [(2023)] 15 Cal.5th [433,] 464.) Citing section 189, subdivision (e)(2), it explained that if a jury made findings of (1) an 'intent to kill,' (2) 'the commission or attempted commission of a felony enumerated in the statute,' and (3) 'the death of a person during the commission or attempted commission of the enumerated felony,' 'the jury's findings would conclusively establish all of the elements of felony murder under current law.' [Citation.] In such a situation, 'the jury's findings would completely refute a petitioner's allegation that he or she could not currently be convicted of murder because of changes to sections 188 and 189.' [Citation.] These statements from the Supreme Court clarify that the actus reus embodied in section 189, subdivision (e)(2) is simply aiding the enumerated felony (or attempted enumerated felony)." (*Morris*, *supra*, 100 Cal.App.5th at p. 1026, review granted.)

8

While the high court's discussion of felony murder in *Curiel* is dicta, Supreme Court dicta "has persuasive value that we cannot ignore absent a compelling reason." (*People v. Njoku* (2023) 95 Cal.App.5th 27, 43.) We find no compelling reason here. Moreover, we read the court's discussion of how felony murder is proved as identifying the actus reus a jury must find true beyond a reasonable doubt (i.e., the commission or attempted commission of a qualifying felony) not as a passing reference where the court merely assumes the actus reus was established. (*People v. Curiel*, *supra*, 15 Cal.5th at p. 464.) This, along with the plain language of section 189, as we have interpreted it, lead us to the conclusion we reach here. Any ambiguity raised by our colleagues' interpretation of section 189's plain language can be resolved by a review of the legislative history of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).

Senate Bill 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer [(§ 189, subd. (e)(1))], did not act with the intent to kill [(§ 189, subd. (e)(2))], or was not a major participant in the underlying felony who acted with reckless indifference to human life [(§ 189, subd. (e)(3))]." (Stats. 2018, ch. 1015, § 1, subd. (f).) Thus, "[b]y the Legislature's own description, the only amendment relevant to section 189, subdivision (e)(2) is adding an intent to kill -- nothing else is mentioned. This is wholly consistent with our interpretation but leaves an awkward silence if the Legislature intended to create a new actus reus in subdivision (e)(2). By contrast, when the Legislature summarized its intent as to subdivision (e)(3), it mentioned both the mens rea and actus reus." (*Lopez*, *supra*, 104 Cal.App.5th at p. 623; see also *Morris*, *supra*, 100 Cal.App.5th at p. 1027, review granted.)

Indeed, "[a]n overarching goal of the Legislature was to ensure a person would be punished 'according to his or her own level of individual culpability,' or stated differently, to 'more equitably sentence offenders in accordance with their involvement in homicides.' (Stats. 2018, ch. 1015, § 1.) Under defendant's interpretation, a person harboring the

9

heightened mental state of an intent to kill (i.e., express malice) would need to engage in a more significant act vis-à-vis the killing, namely assist the killing itself, than someone with the less culpable mental state of reckless indifference to human life, who would simply have to be a major participant in the underlying felony.  Well-established principles of statutory interpretation caution against adopting an interpretation that runs counter to express legislative intent."  (*Morris*, *supra*, 100 Cal.App.5th at p. 1027, review granted; see also *Lopez*, *supra*, 104 Cal.App.5th at pp. 623-624.)

Given the language of section 189, subdivision (e)(2), our Supreme Court's language in *Curiel*, and the legislative history of section 189, subdivision (e)(2), we conclude that defendant is ineligible for relief under section 1172.6 as a matter of law.  It is undisputed the jury found she acted with the intent to kill and, if the jury found her guilty of first degree murder on a theory of aiding and abetting in felony murder, it necessarily found she aided and abetted in the underlying felony.

In sum, the record of conviction establishes defendant is ineligible for relief as a matter of law and the trial court's error in dismissing her petition for resentencing as an invalid, successive petition, was harmless.

DISPOSITION

The postjudgment order denying defendant's petition for resentencing under section 1172.6 is affirmed.

/s/_____<br>WISEMAN, J.*

I concur:

/s/_____<br>
ROBIE, Acting P. J.

_____

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

DUARTE, J., Dissenting.

I do not agree with the majority that the errors here were harmless, as I cannot conclude the record proves defendant ineligible for relief as a matter of law. Accordingly, I am compelled to dissent.

I agree with the majority opinion in *People v. Kelly* (2024) 105 Cal.App.5th 162, as well as the dissenting opinions in *People v. Lopez* (2023) 88 Cal.App.5th 566 and *People v. Morris* (2024) 100 Cal.App.5th 1016, review granted July 17, 2024, S284751. I do not read the language of the statute at issue here, requiring that a defendant charged with first degree felony murder "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer *in the commission of murder* in the first degree" to require only proof that the defendant aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer *in the underlying felony*. (See Pen. Code, § 189, subd. (e)(2), italics added.)[1] Nor do I read a hypothetical posed by our Supreme Court last year in dicta to be controlling in this situation; I agree with the *Kelly* majority that the "hypothetical *assumed* the actus reus requirement for felony murder was established; it did not purport to define that requirement in the first instance." (*Kelly*, p. 173; see *People v. Curiel* (2023) 15 Cal.5th 433, 464.)

Notably, the portion of the statute at issue here, section 189, subdivision (e), begins by describing the person who will be addressed in the subdivisions to follow as a participant in a felony: "*A participant in* the perpetration or attempted perpetration of *a felony* listed in subdivision (a) in which a death occurs." (§ 189, subd. (e), italics added.) The subdivision then sets forth the three theories of liability for felony murder, including the language at issue here, aiding "in the commission of murder." (§ 189, subd. (e)(2).)

---

[1] Further undesignated statutory references are to the Penal Code.

1

Thus, section 189, subdivision (e) speaks *only* to felony murder. It is already clear that this subdivision is referencing only participants in qualifying felonies and setting forth theories of liability if a death occurs in connection with the qualifying felony. Why then would the words "in the commission of *murder*" be selected as appropriate to express the meaning "in the commission of the *underlying felony*"?

I acknowledge, of course, that felony murder is a theory of murder. Thus, perhaps, within a statutory scheme that was not already laser focused on liability for felony murder, the requirement that a defendant aid the actual killer in the "commission of the murder" could conceivably mean aid the actual killer in a manner that *established liability* for murder, which could then include aiding in the commission of the underlying felony. Perhaps. But section 189, subdivision (e) is specifically directed only at participants in underlying felonies and *sets forth liability requirements* for deaths occurring therein. Particularly in this narrow context, interpreting the word "murder" to mean "underlying felony" makes no sense.

The majority here relies on the *Curiel* hypothetical and also on the legislative history of the statutory scheme at issue here, citing concerns regarding contravention of the expressed proportionality objective behind the amended legislation. (Maj. opn., *ante*, at pp. 9-10.) However, as the *Kelly* court aptly points out, these listed actions (aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or even assisting) in commission of a murder do not necessarily require major participation in the underlying felony (let alone in the murder itself), nor do these actions necessarily require the actor exhibit a reckless indifference to human life during the commission of the underlying felony. (See *People v. Kelly, supra,* 105 Cal.App.5th at pp. 175-176.) "The Legislature presumably understood that culpability is derived from both the defendant's mental state *and* his actions, not one *or* the other." (*Id*. at p. 175.) Delving into degrees of culpability is in large part the purpose of the hearings provided for within the statute permitting these resentencing petitions (see § 1172.6, subd. (c), (d)), and defendant here had no chance to

present evidence of her degree of culpability, or even to brief and argue her case in the trial court.

As the majority explains (maj. opn., *ante*, at pp. 3-4), defendant's first two petitions for resentencing were summarily denied by the trial court without appointing counsel. Her third petition was denied without allowing briefing or a hearing, in a written order wherein the trial court compared defendant's petition to a "successive writ[] of habeas on the same subject matter," calling the petition "an abuse of the writ process" and "improper" and ultimately inexplicably concluding that acting on the petition would be in excess of its jurisdiction. On appeal, we are labeling defendant's treatment in the trial court as "harmless error" by concluding that "in the commission of murder in the first degree" actually means "in the commission of the underlying felony," and thus defendant was never entitled to full consideration of her claim. I cannot agree that this disposition is correct. I would send defendant's case back to the trial court for full consideration of her claim. I respectfully dissent from the majority's decision to do otherwise.


                                        /s/
                                        DUARTE, J.



                                        3